UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY ALAN DAYLEY,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>JEFFREY BEARD, SECRETARY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,[1]<br><br>　　　　　Respondent. | No. 2:14-cv-2691 MCE DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner alleges his trial counsel's failure to file the appropriate forms to initiate his appeal violated petitioner's rights to the effective assistance of counsel under the Sixth Amendment. Before the court is respondent's motion to dismiss the petition as untimely. For the reasons set forth below, the undersigned will recommend respondent's motion be granted.

////

---

[1] Petitioner is currently in federal custody out of state. In his petition, he challenges a conviction and sentence rendered by the Sacramento County Superior Court. According to petitioner, he will serve the sentence for this state conviction after he completes his federal sentence. (See ECF No. 1 at 10.) Pursuant to respondent's request, the court replaces the Warden of FCI Marianna, who petitioner originally named as respondent, with Jeffrey Beard. (See ECF No. 11 at 1 n.1.)

1

# BACKGROUND

On August 26, 2011, petitioner plead guilty in Sacramento County Superior Court to numerous counts of sexually abusing children. He was sentenced to a determinate state prison term of thirty years and eight months, plus an indeterminate term of thirty years to life.[2] (See Lodged Documents ("LD") 1, 2.[3]) On November 28, 2011, a notice of appeal was received.[4] On January 10, 2012, attorney John Schuck was appointed to represent petitioner on appeal. On February 10, 2012, attorney Schuck filed an opening appellate brief. On July 16, 2012, the California Court of Appeal for the Third Appellate District corrected the initials of the victims' names, modified the restitution and fee assessments, and affirmed the judgment in all other respects. (LD 2.) Petitioner sought review in the California Supreme Court. (LD 3.) The California Supreme Court denied review on September 19, 2012. (LD 4.)

Petitioner subsequently filed three pro se state habeas corpus petitions. He filed the first on January 10, 2014 in the Sacramento County Superior Court. (LD 5.) It was denied on March 10, 2014. (LD 6.) He filed the second on April 30, 2014 in the California Court of Appeal for the Third Appellate District. (LD 7.) That petition was denied on May 15, 2014. (LD 8.) Petitioner filed his third state habeas petition in the California Supreme Court on June 6, 2014. (LD 9.) It was denied on September 10, 2014. (LD 10.)

Petitioner initiated the present action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 on November 12, 2014. (ECF No. 1.) On January 7, 2015, the court ordered respondent to file a response to the petition. (ECF No. 6.) Respondent filed the present motion on March 6, 2015. (ECF No. 11.)

---

[2] According to petitioner, immediately after the state sentencing, he was transferred to federal custody to be sentenced in federal court. He has remained in federal custody since then. (Pet. (ECF No. 1 at 13).)

[3] Respondent lodged relevant portions of the state court record. (See ECF No. 12.)

[4] Some dates have been gleaned from the docket of the Court of Appeal for the Third Appellate District, which is available online at http://appellatecases.courtinfo.ca.gov. On a motion to dismiss, this court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); see also Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

# MOTION TO DISMISS

Respondent alleges that petitioner's habeas petition was filed beyond the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d). (ECF No. 11.) Petitioner opposes the motion on the grounds that he filed the petition within one year of discovering that his attorney failed to file the proper documentation for his appeal. (ECF No. 16.) In his reply, respondent argues petitioner failed to exercise reasonable diligence to discover his claim. (ECF No. 17.)

## I. Legal Standards

### A. Standards for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." The Court of Appeals for the Ninth Circuit construes a motion to dismiss a habeas petition as a request for the court to dismiss under Rule 4. See O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1991). Accordingly, the court will review respondent's motion to dismiss pursuant to its authority under Rule 4.

In ruling on a motion to dismiss, the court "must accept factual allegations in the [petition] as true and construe the pleadings in the light most favorable to the non-moving party." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1030 (9th Cir. 2008)). In general, exhibits attached to a pleading are "part of the pleading for all purposes." Hartmann v. Cal. Dept. of Corr. and Rehab., 707 F.3d 1114, 1124 (9th Cir. 2013) (quoting Fed. R. Civ. P. 10(c)).

### B. AEDPA Statute of Limitations

AEDPA's one-year statute of limitations provides in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ; or
>
> . . .

3

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### 1. Trigger Dates for the Limitations Period

Under subsection (d)(1)(A), the limitations period runs from the time a petition for certiorari to the United States Supreme Court was due, or, if one was filed, from the final decision by that court. Lawrence v. Florida, 549 U.S. 327, 339 (2007).

Under subsection (d)(1)(D), the objective standard for determining when time begins to run is "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)). "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012) (citation omitted). Thus, "[a]lthough section 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court also considers the petitioner's particular circumstances." Id. The requirement of due diligence generally implies an affirmative duty to investigate after some triggering event has raised, or should have raised, the suspicion that further investigation might prove fruitful. See, e.g., Singh v. Gonzales, 491 F.3d 1090, 1096 (9th Cir. 2007); Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc., 858 F.2d 499, 504 (9th Cir. 1988).

### 2. Tolling

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). "The period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled—because it is part of a single round of habeas relief—so long as the filing is timely under California law." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010) (citing Evans v.

Chavis, 546 U.S. 189, 191-93 (2006)); see also Carey v. Saffold, 536 U.S. 214, 216-17 (2002) (within California's state collateral review system, a properly filed petition is considered "pending" under section 2244(d)(2) during its pendency in the reviewing court as well as during the interval between a lower state court's decision and the filing of a petition in a higher court, provided the latter is filed within a "reasonable time").

The limitations period may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). An extraordinary circumstance must be more than merely "'oversight, miscalculation or negligence on [the petitioner's] part.'" Waldron–Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). Rather, petitioner must show that some "external force" "stood in his way." Id. "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotation marks omitted).

**II.     Analysis**

**A.  Timeliness Under Subsection (d)(1)(A)**

Absent tolling, petitioner's petition was not timely under 28 U.S.C. § 2244(d)(1)(A). Petitioner's direct review concluded when the time expired to challenge the California Supreme Court's denial of review by filing a petition for a writ of certiorari with the United States Supreme Court. See Lawrence, 549 U.S. at 339. The California Supreme Court denied review on September 19, 2012. (LD 4.)   Any petition for a writ of certiorari was due ninety days later. Maes v. Chavez, 792 F.3d 1132, 1133 (9th Cir.), cert. denied, 136 S. Ct. 258 (2015). That ninety-day period expired on December 8, 2012. The one-year limitations period commenced running the following day, on December 9, 2012. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (commencement of limitations period excludes last day of period for seeking direct review, by application of Fed. R. Civ. P. 6(a)). Petitioner did not file his first state habeas petition until January 10, 2014, over a year later. Once the federal limitations period has expired, it may not be

reinitiated by the filing of a state habeas petition, even if that habeas petition was timely under state law. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

### B. Timeliness Under Subsection (d)(1)(D)

Petitioner contends his filing is timely under 28 U.S.C. § 2244(d)(1)(D) because he filed within one year of discovering the factual predicate for his claims. According to petitioner, he did not discover that his attorney had failed to properly initiate his appeal until he received copies of the denial of his appeal from his family in October 2013. (ECF No. 13 at 4.) Respondent argues petitioner was not diligent in learning about his appeal and therefore should not benefit from a later trigger date under subsection (d)(1)(D).

#### 1. Factual Background Presented

Petitioner relates the following facts, which are not disputed by respondent. (Pet. (ECF No. 1 at 12-32).)

On August 16, 2011, petitioner plead guilty to fifteen counts of unlawful sexual activity with a minor. On September 23, 2011, he was sentenced to 60 years, plus 8 months, to life. Petitioner did not waive his right to appeal in the plea agreement. Petitioner states that after he was sentenced in state court, he was transferred to various facilities before he appeared in federal court to be sentenced there. He was then sent to federal prison, where he remains today.

After he was sentenced, petitioner told his trial attorney he wanted to appeal. Petitioner was aware that his notice of appeal was due 60 days after sentencing, which would have been November 23, 2011. On November 21, no notice of appeal had been filed so petitioner filed a pro se notice on November 23, 2011. That notice was rejected by the Court of Appeals because it was received after the deadline.

Petitioner then contacted the Central California Appellate Project ("CCAP") to assist him with his appeal. CCAP sent petitioner's defense counsel a letter notifying him that petitioner wished to appeal and instructing him that to appeal from a guilty plea, petitioner would need to file a Request for a Certificate of Probable Cause with the notice of appeal.

////

////

On January 10, 2012, the Court of Appeal appointed appellate counsel for petitioner. Petitioner states that the notice of that appointment was the last thing he heard about his appeal. According to petitioner, that appointed attorney never contacted him.

Petitioner contends that he was not permitted to bring any of his legal materials with him to federal prison. Therefore, he did not have the name of his appellate lawyer and had to rely on his family to obtain information for him. In addition, petitioner did not have access to California state court research materials while he was in federal prison.

In the fall of 2013, petitioner asked his family to investigate what had become of his appeal. Eventually, in the late fall of 2013, his parents obtained copies of the appeal brief and the denial of petitioner's appeal. Petitioner learned then for the first time that the only claim raised on appeal was a challenge to a booking fee. He also learned that the reason appellate counsel was unable to raise any other claims was due to trial counsel's failure to request a Certificate of Probable Cause when he filed the notice of appeal.

Shortly after petitioner learned of defense counsel's failure to obtain a Certificate of Probably Cause and of the denial of his appeal, petitioner sought state habeas relief.

### 2. Was the Petition Timely Under Subsection (d)(1)(D)?

Whether or not petitioner satisfies the subsection (d)(1)(D) standard hinges on whether it was reasonable to wait as long as he did to investigate the status of his appeal. According to petitioner, the last thing he heard regarding his appeal was that he had been appointed counsel on January 10, 2012. According to the declaration of petitioner's mother, he asked her to look into the status of his appeal in early September 2013.  (Ex. E to Pet. (ECF No. 1 at 45).)  Therefore, petitioner waited about 20 months to do any investigation into his appeal.

Initially, the court finds petitioner's reason for waiting so long to investigate his appeal does not ring true or reasonable. Petitioner states that he assumed appellate counsel had filed an appeal and he was waiting to hear the result. However, petitioner also states that he never had any communication with appellate counsel. It is unclear how petitioner thought appellate counsel could raise claims on his behalf. It is also unclear what petitioner contends those unraised claims are. Petitioner repeatedly asserts that he had appealable issues but he does not identify them. The

1 obvious need for petitioner's counsel to discuss any appealable issues with him seems particularly
2 true here because petitioner plead guilty.  Therefore, there was no trial record upon which
3 appellate counsel could have based an appeal.

4       That said, even if it was reasonable for petitioner to believe his appellate attorney would
5 raise appropriate issues on appeal, it was not reasonable for petitioner to wait as long as he did to
6 pursue information about his appeal.  While the case law does not establish a rule of thumb for
7 diligence in discovering information about an appeal, the case law makes clear that a person in
8 petitioner's circumstances waiting well over a year and a half to investigate the status of an
9 appeal does not demonstrate due diligence.

10       Although analyzed objectively, the "due diligence" inquiry is individualized and requires
11 a court to consider the totality of the circumstances.  See Aron v. United States, 291 F.3d 708,
12 712 (11th Cir. 2002).[5]  In considering a prisoner's claim that counsel was constitutionally
13 ineffective for failing to file a proper notice of appeal, a court should focus on the prisoner's
14 conditions of confinement, a prisoner's ability to communicate with the court and counsel, and
15 communications between the prisoner and the prisoner's counsel and between the prisoner and the
16 court.  See, e.g., Ryan v. United States, 657 F.3d 604, 607–08 (7th Cir. 2011); Anjulo–Lopez v.
17 United States, 541 F.3d 814, 818–19 (8th Cir. 2008); Aron, 291 F.3d at 712; Wims v. United
18 States, 225 F.3d 186, 190–91 (2nd Cir. 2000).  Moreover, section 2244(d)(1)(D) "does not require
19 the maximum feasible diligence, ... [it requires] only 'due,' or reasonable, diligence." Aron, 291
20 F.3d at 712 (citing Wims, 225 F.3d at 190 n. 4).  Thus, "[d]ue diligence . . . does not require a
21 prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but

---

[5] Many of the cases cited involve the statute of limitations for federal prisoner to bring habeas actions under 28 U.S.C. § 2255.  The limitations period under that section, subsection (f), is in relevant parts the same as the limitations period under section 2254(d).  The language of section 2254(d)(1)(D) considered here is essentially the same as the language of section 2255(f)(4) which also provides a trigger date for the statute of limitations from the time the "facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Accordingly, as other courts have done, this court considers cases examining section 2255(f)(4)'s diligence requirement as authority for the standards of diligence under section 2254(d)(1)(D). See McAleese v. Brennan, 483 F.3d 206, 216 n. 13 (3rd Cir. 2007); Stewart v. Stephens, No. 7:13-cv-013-O, 2015 WL 6522828, at *2 (N.D. Tex. Oct. 26, 2015).

1  rather to make reasonable efforts." Id.  In sum, the term "due diligence" "is an inexact measure
2  of how much delay is too much." Johnson v. United States, 544 U.S. 295, 309 n. 7 (2005).

3  The Seventh has Circuit noted that "[n]o rule of thumb emerges from the cases on how
4  long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic
5  number." Ryan, 657 F.3d at 607.  In a number of cases, including Ryan, courts considered how
6  long it would take a duly diligent prisoner to discover that his lawyer failed to file a notice of
7  appeal.  The undersigned finds the reasonable diligence involved in determining whether a notice
8  of appeal has been filed similar to the reasonable diligence involved in determining whether an
9  appellate brief has been filed.

10  While various circuit courts have reached differing results on how long it would take a
11  duly diligent prisoner to discover that the prisoner's lawyer failed to file a notice of appeal, all
12  courts appear to agree that a year is too long. Id.; compare, e.g., Granger v. Hurt, 90 Fed. Appx.
13  97, 100 (6th Cir. 2004) (prisoner may wait at least two months after his sentencing hearing before
14  inquiring whether counsel filed a notice of appeal and still be found to have acted with "due
15  diligence"), and Wims, 225 F.3d at 188, 191 (prisoner who waited five months to file his motion
16  to vacate may have acted with "due diligence" given that he only waited four months after his
17  sentencing hearing before inquiring whether his counsel filed a notice of appeal), with Anjulo–
18  Lopez, 541 F.3d at 818–19 (prisoner who "waited an entire year to even contact his attorney
19  regarding his appeal" did not act with "due diligence" (emphasis omitted)), and Montenegro v.
20  United States, 248 F.3d 585, 588, 593 (7th Cir. 2001) (prisoner who waited nearly two years to
21  file a motion to vacate did not act with "due diligence" given that six months after his sentencing
22  hearing the prisoner had received a docket sheet "that revealed that an appeal in his case had not
23  been filed"), partially overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th
24  Cir. 2001).  "[T]he district court need not decide precisely how long is too long if it can safely say
25  that, whenever the line is, [the prisoner's case] lies on one side or the other." Ryan, 657 F.3d at
26  608.

27  In the present case, petitioner states that he was transferred several times before ending up
28  in federal custody.  Petitioner does not explain how long those transfers took or when he arrived

at FCI Mariana, where he is currently incarcerated. Further, petitioner does not explain why he was unable to request information on his appeal during the time he was in state custody or why he could not send and receive mail when he was in federal custody. While he states that the federal prison did not have California state legal materials, he could have sent letters or made phone calls to courts, or asked family members to do so, to obtain information on his appeal, including his attorney's name and address, which would have been a matter of public record. Cf. Anjulo–Lopez, 541 F.3d at 819 (considering whether prisoner could have learned needed information through a public record in assessing "due diligence"); Green v. Johnson, 515 F.3d 290, 305 (4th Cir. 2008); Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003); Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000) ("[T]he lack of a[n appeal] was a matter of public record, which reasonable diligence could have unearthed."). By petitioner's own account, he did nothing to inquire about his appeal for over a year and a half.

This court finds that a prisoner in petitioner's circumstances exercising reasonable diligence would have sought information about his appeal long before petitioner did and before petitioner's direct review concluded on December 8, 2012. Had petitioner exercised reasonable diligence, he would have known before December 8, 2012 that his appellate attorney raised only one claim. Therefore, this court finds that petitioner is not entitled to a later trigger date for the statute of limitations under 28 U.S.C. § 2254(d)(1)(D).

**C.  Equitable Tolling**

Petitioner asks this court to find, in the alternative, that the limitations period was equitably tolled. As described above, the limitations period may be equitably tolled if a petitioner establishes that he was diligent in pursuing his rights and that some extraordinary circumstance prevented timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010). That "extraordinary circumstance" must be something more than petitioner's own negligence; petitioner must show that some external force stood in his way. Waldron–Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009).

Here, petitioner fails the first part of the equitable tolling test because, as discussed above, he has not shown he was diligent in pursuing his rights. See Hannigan v. United States, 131 F.

Supp. 3d 480, 495 (E.D. N.C. 2015) (court finds the petitioner lack of diligence under trigger date provision means petitioner also lacked diligence required for equitable tolling), appeal dismissed, 638 Fed. Appx. 234 (4th Cir.), cert. denied, 137 S. Ct. 404 (2016).  Because equitable tolling requires a finding of both diligence and an extraordinary circumstance, this court finds petitioner is not entitled to equitable tolling.

## CONCLUSION

Petitioner's petition was untimely under 28 U.S.C. § 2254(d)(1)(A) and he is not entitled to equitable tolling.  Further, petitioner is not entitled to a later trigger date for the statute of limitations under 28 U.S.C. § 2254(d)(1)(D).

For the foregoing reasons, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss be granted and this case be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 4, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/dayl2691.mtd